UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEP DE PAZ SALES,
    Plaintiff,
  v.
WILLIAM P. BARR, et al.,
    Defendants.

Case No. 19-cv-04148-KAW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 1

On July 18, 2019, Petitioner Josep De Paz Sales filed a petition for writ of habeas corpus. (Pet., Dkt. No. 1.) Since July 10, 2018, Petitioner has been detained at the Yuba County Jail pending removal proceedings under the Immigration and Nationality Act ("INA"). (Pet. ¶ 1.) Petitioner seeks his immediate release or a new bond hearing. (Pet. ¶ 1.)

Having considered the parties' filings, the relevant legal authority, and the arguments made at the September 5, 2019 hearing, the Court GRANTS Petitioner's petition for a new bond hearing.

## I. BACKGROUND

Petitioner is a 21-year old man from Guatemala, who has resided in the United States since he was six years old. (Pet. ¶ 20.) Petitioner left Guatemala after witnessing members of the Barrio 18 gang shoot his grandfather and cousin. (Petition ¶ 20.) Petitioner asserts that these experiences caused him future issues, including problems focusing at school and nightmares. (Pet., Exh. B ("De Paz Sales Decl.") ¶ 4.) When Petitioner was fifteen years old, he watched his baby sister choke to death. (Pet. ¶ 34; De Paz Sales Decl. ¶ 6.) Soon after, Petitioner began drinking alcohol to avoid dealing with what happened with his sister. (De Paz Sales Decl. ¶ 7.)

After turning eighteen, Petitioner began having trouble with the law, including two

criminal convictions.[1] (De Paz Sales Decl. ¶ 9.) On October 23, 2017, Petitioner pled guilty to burglary (felony) and was sentenced to 180 days in jail. (De Paz Sales Decl. ¶¶ 9,12; Gagelonia Decl. ¶ 5, Dkt. No. 11-1.) While under the influence of drugs and alcohol, Petitioner accompanied a childhood friend to an apartment building. (De Paz Sales Decl. ¶ 10.) Petitioner's friend went into the building, and after some time, Petitioner went to look for him and found him robbing the apartment. Petitioner's friend told Petitioner to help him, and shortly thereafter, the victim woke up and called the police. Petitioner ran away, leaving everything in his hands in the apartment. (De Paz Sales Decl. ¶ 10.) Afterwards, Petitioner wrote an apology to the victim. (De Paz Sales Decl. ¶ 11.) Petitioner served less than six months before he was released. (De Paz Sales Decl. ¶ 12.)

On November 14, 2017, Petitioner was convicted of driving under the influence (misdemeanor). (Pet. ¶ 37.) Petitioner was sentenced to two days in county jail and ordered to complete DUI classes. (Pet. ¶ 37; De Paz Sales Decl. ¶ 13.)

On July 9 or 10, 2018, Petitioner was detained by the Department of Homeland Security ("DHS"). (Pet. ¶ 23; Gagelonia Decl. ¶ 7.) On July 10, 2019, Petitioner was personally served with a Notice to Appear ("NTA") initiating removal proceedings pursuant to the INA. (Gagelonia Decl. ¶ 8.)

On August 1, 2018, Petitioner requested a bond hearing. (Gagelonia Decl. ¶ 10.) On August 14, 2018, the Immigration Judge ("IJ") conducted an initial bond hearing. (Pet. ¶ 24, Gagelonia Decl. ¶ 11.) At the hearing, Petitioner provided six letters of support from family members, a letter from a Yuba County Jail education instructor, an admission letter from the Salvation Army Oakland Residential Substance Abuse Treatment Program, and an expert affidavit from a psychological-expert regarding adolescent development and judgment. (Pet. ¶ 24.) Petitioner testified about his personal and criminal history. (De Paz Sales Decl. ¶ 14.) The IJ told

---

[1] Between July 3, 2016 and July 29, 2018, Petitioner was also arrested for: (1) obstructing a public officer, (2) carrying a concealed firearm, (3) carrying a loaded firearm in public, (4) hit and run with property damage, (5) burglary, (6) possession of a controlled substance, (7) transportation of mushrooms, (8) probation violation, and (9) battery with serious bodily injury. (Gagelonia Decl. ¶ 4, Dkt. No. 11-1.) It is not clear these arrests were considered by the Immigration Judge ("IJ") during Petitioner's original bail hearing.

Petitioner he was credible and that he believed his testimony, including about Petitioner's low level of involvement in the burglary. (De Paz Sales Decl. ¶ 14.) The IJ, however, stated he was worried about Petitioner's DUI and denied him bail. (De Paz Sales Decl. ¶ 14.) That same day, the IJ issued an order denying Petitioner bail on the ground that he was a danger to the community. (Pet., Exh. C.)

On October 1, 2018, the IJ held an individual merits hearing on Petitioner's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). (Pet. ¶ 26; Gagelonia Decl. ¶ 12.) That same day, the IJ issued an order denying Petitioner's applications for relief, and ordered Petitioner removed to Guatemala. (Pet. ¶ 26, Exh. D; Gagelonia Decl. ¶ 12.) The order did not provide any analysis of how the law applied to the facts of Petitioner's case, or any case-specific reasoning. (Pet. ¶ 26.)

On October 15, 2018, Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). (Pet. ¶ 27, Exh. E.) On March 7, 2019, the BIA affirmed the IJ's decision to deny Petitioner's applications for asylum and withholding of removal, but remanded his application for relief under the CAT because "the [IJ] has not done sufficient analysis or fact finding regarding the country conditions evidence submitted by the parties and the testimony of the expert witness." (Pet. ¶ 28, Exh. F at 3.) Without such fact finding and analysis, the IJ's "decision does not provide the [BIA] adequate means to review the bases for the [IJ's] decision in light of the respondent's arguments on appeal." (*Id.*)

On April 8, 2019, the IJ denied Petitioner's application for relief under the CAT. (Pet. ¶ 29, Exh. G.) On May 8, 2019, Petitioner failed to file a timely appeal of the IJ's decision to the BIA. (Gagelonia Decl. ¶ 16.) On May 10, 2019, Petitioner filed an emergency motion for reissuance of the IJ's decision, which would allow Petitioner an extra thirty days to appeal. (Gagelonia Decl. ¶ 17.) On May 16, 2019, the IJ granted Petitioner's motion and reissued the decision. (Gagelonia Decl. ¶ 18.) Petitioner filed his appeal of the IJ's denial for relief that day. (Pet. ¶ 31.)

On May 17, 2019, Petitioner filed a motion for a new bond hearing based on changed circumstances. (Pet., Exh. H at 2.) In support of his motion, Petitioner submitted evidence of: his

recent completion of his high school diploma; his coursework, including attending substance abuse treatment classes; a newly assigned caseworker advocate from the Alameda County Public Defender's Office, who would provide him support in his rehabilitation process if released from detention; Petitioner's acceptance to an outpatient alcohol and drug counseling service; an additional year of sobriety; and Petitioner's tentative admission to the Secure Continuous Remote Alcohol Monitor ("SCRAM") program. (Pet. ¶¶ 42-46.)

On May 20 or 21, 2019, the IJ denied Petitioner's motion for a new bond hearing. (Pet. ¶ 47; Gagelonia Decl. ¶ 20.) On May 30, 2019, Petitioner appealed the IJ's denial. (Pet. ¶ 47, Exh. J.) On June 5, 2019, the IJ issued a written order, finding:

> [N]one of the changes are material to the Court's original finding that he failed to meet his burden of proof that he was not a danger to the community. The court found that the respondent did not meet his burden of proof due to his criminal history which evidenced that he committed multiple acts which were dangerous. The court applauds respondent for using his time while detained to take classes. However, neither his classes, nor his continued sobriety, which a substantial amount of the time has been while Respondent has been detained, nor any of his plans for release are material to the court's decision finding that Respondent failed to meet his burden of proof.

(Pet., Exh. I at 2.) The bond appeal has been fully briefed as of July 1, 2019. (Pet. ¶ 47.)

On July 18, 2019, Petitioner filed the instant petition for a writ of habeas corpus. In his Petition, Petitioner states his concerns about violence, noting that he has been threatened by other inmates ten to twenty years his senior. (De Paz Sales Decl. ¶ 19.) He states that he is only given access outside for about an hour a couple times a week, although sometimes they are taken outside at 5 a.m., in which case he does not go so that he can sleep. (De Paz Sales Decl. ¶ 18.) Petitioner states that "[t]he hardest thing" about his "detention on a physical and psychological level is that [he is] inside 24 hours a day." (De Paz Sales Decl. ¶ 24.) Petitioner has been prescribed three daily medications, including an anti-anxiety drug. Petitioner took the medication for a while, but stopped because he felt "such scary changes to [his] personality and body . . . ." (De Paz Sales Decl. ¶ 24.) Petitioner had not taken drugs like that before his detention. (De Paz Sales Decl. ¶ 24.) Petitioner also states that the concern that it could take months or years to get a final decision, and that he may be detained during that time, is "having a very negative affect [sic] on

4

[him] psychologically," and that he is not sure he will "be able to cope with the detention for too much longer." (De Paz Sales Decl. ¶¶ 25, 27.)

Pursuant to a stipulated briefing schedule, the Government filed its return on August 7, 2019. (*See* Dkt. No. 4; Gov't Return, Dkt. No. 11.) On August 22, 2019, Petitioner filed his traverse. (Pet.'s Traverse, Dkt. No. 15.)

## II. LEGAL STANDARD

The INA "authorizes the detention of aliens awaiting removal from the United States." *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1000 (N.D. Cal. 2018). 8 U.S.C. § 1226 "generally governs the process of arresting and detaining that group of aliens pending their removal." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting 8 U.S.C. § 1226(a).) Except as provided by § 1226(c), which carves out a category of aliens who may not be released under § 1226(a), "the Attorney General 'may release' an alien detained under § 1226(a) 'on bond or . . . conditional parole.'" *Id.* (quoting 8 U.S.C. §1226(a)).

## III. DISCUSSION

### A. Exhaustion

The Government contends that the Court should decline to review Petitioner's Petition because he did not exhaust administrative remedies. (Gov't Return at 5.) In general, "District Courts are authorized by 28 U.S.C. § 2241 to consider petitions for habeas corpus." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001). While § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus[, the courts] require, as a prudential matter, that habeas petitioners exhaust available judicial remedies before seeking relief under § 2241." *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (internal quotation and modification omitted).

"[C]ourts have discretion to waive the exhaustion requirement when it is prudentially required." *Laing*, 370 F.3d at 998. This discretion, however, "is not unfettered." *Id.* Courts may waive exhaustion "such as where administrative remedies are inadequate or not efficacious,

5

pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* at 1000 (internal quotation omitted).

Here, Petitioner may – and, in fact, has – appeal the IJ's bond decision to the BIA. *See Leonardo v. Crawford*, 646 F.3d 1157, 1159 (9th Cir. 2011). If Petitioner is dissatisfied with the BIA's decision, he may then file a habeas petition. *Id.* Petitioner contends that the Court should waive exhaustion because his administrative remedies are inadequate and not efficacious, as bond appeals "take generally between 4-6 months," during which Petitioner will be subject to additional unlawful detention. (Pet. ¶ 48.) Petitioner also argues that he will suffer irreparable harm, particularly because he has already been detained for over a year in civil custody. (Pet. ¶ 49.)

The Court finds that Petitioner has demonstrated he will suffer irreparable harm if exhaustion is not waived. The Government correctly observes that "the fact that pursuing appeals through administratively-established procedures may result in delay is common to all aliens seeking review of their custody or bond determinations." *Resendiz v. Holder*, Case No. 12-cv-4850-WHA, 2012 WL 5451162, at *5 (N.D. Cal. Nov. 7, 2012); *see also Cortez v. Nielsen*, Case No. 19-cv-754-PJH, 2019 WL 1508458, at *3 (N.D. Cal. Apr. 5, 2019). Courts in this district, however, have found that waiver is appropriate when detention has become prolonged. For example, in *Villalta v. Sessions*, the district court found waiver appropriate where the petitioner had been detained for more than eight months, and there was no dispute that the BIA often took four months or more to decide an appeal. Case No. 17-cv-5390-LHK, 2017 WL 4355182, at *3 (N.D Cal. Oct. 2, 2017). "Thus, the potential for irreparable harm to Petitioner, in the form of continued unlawful denial of bond hearings for potentially four months or more," warranted waiver. *Id.* Likewise, in *Ramos v. Sessions*, the district court waived exhaustion where the petitioner had been detained for eleven months, and expected her appeal of the denial of bond to take four months. Case No. 18-cv-413-JST, 2018 WL 905922, at *3 (N.D. Cal. Feb. 15, 2018). Finally, in *Lopez Reyes v. Bonnar*, the district court found irreparable harm where the petitioner had been detained for approximately twenty-one months, and his appeal could take an additional five months to adjudicate. *Lopez Reyes I*, Case No. 18-cv-7429-SK, 2018 WL 747861, at *7 (N.D. Cal. Dec. 24, 2018). In so finding, the district court noted that "[a]lthough these effects

6

from irreparable harm are the same type of harm any person who is detained may suffer, they are irreparable in nature. *Id.*

Here, Petitioner has been detained as of July 2018. Notably, his detention was prolonged in part due to the IJ's error in providing no reasoning in denying Petitioner relief under the CAT, requiring an appeal that lasted six months. Such an appeal – and the resulting six months of detention – could have otherwise been avoided, and was outside of Petitioner's control. To now require Petitioner to be detained several months more as the BIA decides his appeal would cause Petitioner irreparable harm of additional detention. *See Villalta*, 2017 WL 4355182, at *3; *Ramos*, 2018 WL 905922. Further, Petitioner points out that the Government does not address the fact that Petitioner "continues to experience detrimental psychological and emotional effects due to his continued detention." (Pet.'s Traverse at 2.) These effects appear to stem directly from the conditions of Petitioner's civil detention, including being held indoors nearly twenty-four hours a day. (De Paz Sales Decl. ¶¶ 18, 24.)

Accordingly, Petitioner is excused from exhaustion.

### B. Due Process Violation

Petitioner makes two due process claims. First, Petitioner asserts that due process requires that he be given a new bond hearing, in light of his prolonged detention. (Petition ¶ 69.) Second, Petitioner contends that the IJ's denial of his motion for a new bond hearing violates his due process rights, as well as his statutory and regulatory right to a bond hearing. (Petition ¶ 74.)

#### i. Prolonged Detention

In arguing that he is entitled to a new bond hearing in light of his prolonged detention, Petitioner argues that the Court should find his detention is prolonged under either a six-month bright line rule or a reasonableness test. (Pet.'s Traverse at 6-10.)

With respect to a bright line rule, "the Supreme Court in *Jennings* made clear that [a p]etitioner is not statutorily entitled to periodic bond hearings under 8 U.S.C. § 1226(a) . . . ." *Lopez Reyes v. Bonnar (Lopez Reyes II)*, 362 F. Supp. 3d 762, 775 (N.D. Cal. 2019); *see Jennings*, 138 S. Ct. at 842-43. The Supreme Court, however, did not address whether the Due Process clause requires periodic bond hearings at six-month intervals, remanding the issue to the Ninth

7

Circuit. *Id.*; *see Rodriguez v. Nielsen*, Case No. 18-cv-4187-TSH, 2019 U.S. Dist. LEXIS 4228, at *17 (N.D. Cal. Jan. 7, 2019). The Ninth Circuit, in turn, remanded the issue to the district court, but observed: "We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

At least one court in this district has found a bright line rule "that detention becomes prolonged after six months and entitles [a detainee] to a bond hearing." *Rodriguez*, 2019 U.S. Dist. LEXIS 4228, at *18. Other courts, however, have eschewed a bright line rule in favor of conducting an individualized due process analysis. *See Lopez Reyes I*, 2018 WL 747861, at *9. Because, as discussed below, the Court finds that Petitioner is entitled to a bond hearing pursuant to an individualized determination, the Court need not determine whether a bright line rule exists.

"In general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Gonzalez v. Bonnar*, Case No. 18-cv-5321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (internal quotation omitted). In *Gonzalez*, the district court found that the petitioner's prolonged detention – which had already lasted over a year, and was likely to last a total of at least 15-17 months – violated due process. *Id.* at *5. The court explained that "[i]n *Demore*, the Supreme Court held that mandatory detention under § 1226(c) was not per se unconstitutional." *Id.* at *4 (citing *Demore v. Kim*, 538 U.S. 510, 513 (2003)). "*Demore*, however, focused on the brevity of the detention and concluded that because the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases there was no due process issue." *Id.* (emphasis omittedw). In contrast, the petitioner's likely detention of 15-17 months was "four times the 'brief' detention approved in *Demore*." *Id.* at *5. Thus, the district court found that the length of the petitioner's detention supported his due process claim.

Additionally, the district court found that other factors supporting a finding of prolonged detention, specifically: (1) the petitioner had identified several good faith challenges to the IJ's orders, which he was appealing to the BIA; (2) the petitioner was being held at Yuba County Jail,

8

a penal institution; and (3) the petitioner's civil detention would likely exceed his detention for his criminal conviction. *Gonzalez*, 209 WL 330906, at *5. The district court also found that as to who was responsible for the delays in the proceedings, the factor was neutral because both the petitioner and the government caused some of the delays. *Id.* Weighing the factors together, the district court concluded that most of the factors weighed in the petitioner's favor, and "the most important—the length of [the p]etitioner's detention—weigh[ed] strongly in his favor." *Id.* Thus, the "[p]etitioner's prolonged detention without an individual bond hearing violate[d] his due process rights." *Id.*

Applying the same factors here, the Court finds that Petitioner's detention is prolonged, requiring a bond hearing. Petitioner has been detained for more than fourteen months, and will likely be detained for several more pending the BIA appeals. Petitioner's detention is more than twice the length of the "brief" detention approved by the Supreme Court in *Demore*. *See* 538 U.S. at 530. This factor weighs strongly in favor of Petitioner's due process claim.

The remaining factors also weigh in Petitioner's favor. Petitioner asserts that he has raised good faith challenges to the IJ's removal order, which Defendant does not dispute. Petitioner is also being held at Yuba County Jail, a penal institution, where he is required to stay indoors almost twenty-four hours a day. Individuals held under § 1226(a) "are subject to civil detention rather than criminal incarceration. The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse v. Sessions*, Case No. 18-cv-54 (PJS/LIB), 2018 WL 4466052, at *5 (D. Minn. Sept. 18, 2018); *see also Gonzalez*, 2019 WL 330906, at *5. Petitioner's civil detention also far exceeds his detention on the underlying criminal offenses, or 180 days for the burglary conviction and two days for the DUI. (De Paz Sales Decl. ¶¶ 12-13.) Finally, the six-month delay was not caused by Petitioner, but the failure of the IJ to provide reasoning in his decision.[2] Each of these factors weigh in favor of finding that Petitioner's detention is prolonged, and that the failure to provide an individual bond hearing violates his due process rights.

---

[2] While Petitioner has arguably caused some delay, specifically an eight-day delay in appealing the IJ's denial of his request for a bond hearing, this delay is minimal.

The Government argues that Petitioner's due process rights are protected by his ability to request a hearing based on materially changed circumstances, citing to *Mathews v. Eldridge*. (Gov.'s Return at 12.)[3] Petitioner responds that applying the traditional *Mathews* test also requires that Petitioner receive an additional bond hearing. (Pet.'s Traverse at 4.) The Court agrees.

Per *Mathews*, the Court must consider three factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976). In *Lopez Reyes II*, the district court concluded that these factors required giving the petitioner another bond hearing. 362 F. Supp. 3d at 777. First, the private interest at stake was the petitioner's freedom. *Id.* at 776. This private interest was strong, particularly when "'[l]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *Id.* (quoting *Rodriguez*, 909 F.3d at 256-57). Second, the government interest was "the ability to detain [the p]etitioner *without providing him with another bond hearing*, not whether the government may continue to detain him." *Id.* at 777 (original emphasis). The costs of conducting the bond hearing were minimal. The district court acknowledged that the government also had an interest in allowing the IJ to assess credibility and decide the issues, but that requiring another bond hearing "does not significantly undermine the government's interest in evaluating the evidence and in making those credibility determinations" as the IJ would be the trier of fact in another bond hearing. Thus, the government interest was less weighty than the petitioner's private interest. *Id.* Finally, the district court found that the value of additional safeguards was high, particularly in light of the petitioner's changed circumstances, including his sobriety, participation

---

[3] The Government cites *Fofana v. Clark*, in which the Ninth Circuit found that prolonged detention was permissible because the IJ had concluded that the petitioner was a flight risk and a danger to the community. 288 Fed. Appx. 432, 435 (9th Cir. 2008). The Government contends that per *Fofana*, no more than an initial bond hearing is required. (Gov.'s Return at 12-13.) As an unpublished decision, *Fofana* is not binding. *Fofana* is also distinguishable as it does not appear the petitioner challenged his continued detention in the absence of a bond hearing. Thus, the Ninth Circuit did not address the issue of whether an additional bond hearing is required as a matter of due process once detention is prolonged.

10

in counseling, and the development of a comprehensive plan upon his release. *Id.* Accordingly, due process required an additional bond hearing to satisfy due process. *Id.*

Here, as in *Lopez Reyes II*, Petitioner's private interest is strong, as he risks continued detention absent a bond hearing. Next, the Government's interest is not strong. While the Government argues that it has an "interest in effectuating removal of those who fall under section 1226(a)," and that "the risk that Petitioner will fail to appear for removal proceedings does not dissipate at the six-month or one-year mark," at issue here is not Petitioner's release but his entitlement to another bond hearing. (Gov.'s Return at 11.) As in *Lopez Reyes II*, the Government does not argue there are any costs to providing a bond hearing. Finally, the Court finds that the value of additional safeguards is high. As Petitioner points out, a hearing is different from the IJ's review of a written request based on changed circumstances, as a hearing allows the IJ to consider "the full body of evidence showing why [Petitioner] is not a danger to the community . . . ." (Pet.'s Traverse at 5.) Petitioner can present the new evidence in the context of previously submitted evidence, allowing the IJ to consider whether such evidence, "*taken together*, . . . can continue to justify Petitioner's detention without bond." (*Id.* at 6.) This ability to consider both the new evidence and the prior evidence is especially significant in the instant case because the IJ applied the wrong burden of proof, requiring Petitioner to prove he was not a danger to the community rather than placing the burden on the Government. (*See* Pet., Exh. I at 2; *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011).)

Accordingly, due process requires that the Government provide Petitioner another bond hearing.

### ii. Material Change

In the alternative, the Court also finds that the IJ committed legal error in denying Petitioner a bond hearing based on changed circumstances. Per 8 C.F.R. § 1003.19(e), a petitioner may obtain a new bond hearing by showing that his "circumstances have materially changed since the prior bond determination." A district court's review is limited by 8 U.S.C. § 1226(e), which provides: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney

11

General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." Thus, "1226(e) precludes an alien from challenging a 'discretionary judgment' by the Attorney general or a 'decision' that the Attorney General has made regarding his detention or release." *Jennings*, 138 S. Ct. at 841 (internal quotation omitted). This section, however, "does not preclude challenges to the statutory framework that permits the alien's detention without bail." *Id.* (internal quotation omitted). Thus, "§ 1226(e) does not strip a district court of its traditional habeas jurisdiction, bar constitutional challenges," or preclude "claims that the discretionary process itself was constitutionally flawed . . . ." *Singh*, 638 F.3d at 1202.

The Government argues that Petitioner's arguments regarding the IJ's denial of a bond hearing is a challenge to the IJ's discretionary judgment and the weighing of the evidence. (Gov.'s Return at 13.) The Court disagrees because the IJ committed legal error, unrelated to the discretionary weighing of any factors. Specifically, the IJ found that Petitioner's evidence was not "material to the Court's original finding that he failed to meet his burden of proof that he was not a danger to the community." (Pet., Exh. I at 2.) The Ninth Circuit, however, has clearly found that "the *government* must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond . . . ." *Singh*, 638 F.3d at 1203 (emphasis added); *see also Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) ("an alien is entitled to release on bond unless the government establishes that he is a flight risk or will be a danger to the community") (internal quotation omitted). To the extent the Government suggests this is not the standard, "numerous courts post-*Jennings* have rejected the government's suggestion that *Jennings* reversed appellate court decisions placing the burden on the government to justify prolonged detention by clear and convincing evidence." *Gonzalez*, 2019 WL 330906, at \*6. While *Jennings* found that the Ninth Circuit had erred in construing § 1226(a) as requiring periodic bond hearings, the Supreme Court "did not engage in any discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the Court was reversing the Ninth Circuit as to that particular issue." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1146-47 (N.D. Cal. 2018). "It has long been the rule in this and other circuits that because immigration detention is civil rather than criminal nature, as in other instances of civil

12

confinement, the burden is on the government to justify detention by clear and convincing evidence." *Gonzalez*, 2019 WL 330906, at *6. Thus, the IJ committed legal error by placing the burden on Petitioner to demonstrate that he was not a danger to the community in deciding whether there were material changes warranting a second bond hearing.

Additionally, it appears "the IJ addressed the ultimate legal issue – whether Petitioner is a current danger to society – as opposed to whether Petitioner demonstrated that his circumstances had materially changed to warrant a second bond hearing." *Lopez Reyes II*, 362 F. Supp. 3d at 774. In *Lopez Reyes II*, the district court found legal error where the IJ discounted the petitioner's evidence because it did not "sufficiently mitigate his dangerousness to the community." *Id.* The district court explained that the IJ should have discussed whether "this evidence demonstrated a material change in Petitioner's circumstances." *Id.* Here, the IJ also focused on whether the new evidence would have changed the IJ's finding that the Petitioner failed to meet his burden of proof that he was not a danger to the community. (*See* Pet., Exh. I at 2.) The IJ did not consider whether the changes themselves were material. This is not the correct legal standard.

Thus, the Court finds that the IJ committed legal error in denying Petitioner's motion for a bond hearing based on changed circumstances.

## IV. CONCLUSION

Having found that due process requires an additional bond hearing and that the IJ committed legal error in denying Petitioner's motion for a bond hearing, the Court finds that Petitioner is entitled to another bond hearing. Petitioner has not demonstrated entitlement to immediate release. The Court therefore GRANTS the petition for a writ of habeas corpus and ORDERS the Government to provide Petitioner with another bond hearing within twenty-one days. At the hearing, the Government must establish by clear and convincing evidence that Petitioner is a flight risk or a danger to the community in order to continue his detention.

IT IS SO ORDERED.

Dated: September 30, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge

13